UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGELO ROSARIO MEDINA,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. 14 C 2669<br><br>Magistrate Judge Mary M. Rowland |

# MEMORANDUM OPINION AND ORDER

Plaintiff Angelo Rosario Medina filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 et seq, 1381 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and have filed cross motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover DIB or SSI, a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp. 2d 973, 977 (N.D. Ill.

2001).[1] A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520, 416.909, 416.920; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

[1] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 et seq. The SSI regulations are set forth at 20 C.F.R. § 416.901 et seq. The standards for determining DIB and SSI are virtually identical. *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on April 19, 2011, alleging that he became disabled on October 1, 2010, because of panic disorder and anxiety. (R. at 13, 190). The application was denied initially and on reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 13, 74–77, 132–33). On March 21, 2012, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 13, 44–66). The ALJ also heard testimony from Kerry Seaver, a vocational expert (VE). (*Id.*).

The ALJ denied Plaintiff's request for benefits on October 12, 2012. (R. at 13–22). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since October 1, 2010, his alleged onset date. (*Id.* at 15). At step two, the ALJ found that Plaintiff's anxiety disorder is a severe impairment. (*Id.* at 15). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations. (*Id.* at 16–17).

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[2] and determined that he can perform the full range of work at all exertional levels but with the following nonexertional limitations:

---

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675–76.

> Due to a moderate limitation in concentration, persistence or pace, his work is limited to simple, routine and repetitive tasks. His job also must be low stress, with only occasional changes in the work setting. He cannot interact with the public and can only occasionally interact with co-workers.

(R. at 17). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that Plaintiff is unable to perform any past relevant work. (*Id.* at 21). Based on Plaintiff's RFC, age, education, and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including handpacker, sorter, and assembler. (*Id.* at 21–22). Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability, as defined by the Act. (*Id.* at 26).

The Appeals Council denied Plaintiff's request for review on February 11, 2014. (R. at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by

substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

# IV. RELEVANT MEDICAL EVIDENCE

Plaintiff's anxiety and depression began in 2004 after he lost his job and his marriage fell apart. (R. at 282). In August 2010, Plaintiff began treating with the PCC Community Wellness Center (PCC). (R. at 370). Plaintiff reported suicidal ideations, increased stress, and anxiety and panic attack symptoms. (*Id.*). Karen Blonsky-Sanchez, LCSW, diagnosed panic disorder, exacerbated by homelessness, and assigned a Global Assessment of Functioning (GAF) score of 56.[3] On August 30, 2010, Plaintiff acknowledged suicidal ideations but denied immediate plans or intent, and complained of anorexia and insomnia. (*Id.* at 371). Blonsky-Sanchez diagnosed panic disorder and assigned a GAF score of 55–60. (*Id.*).

In September 2010, Plaintiff reported panic attacks. (R. at 306). Ann Sarpy, M.D., prescribed Paxil and Lorazepam. (*Id.*). On September 28, 2010, Plaintiff stated he was "very anxious." (*Id.* at 372). In October 2010, Plaintiff reported muscle twitches, increased stress, suicidal ideations, anorexia, and insomnia. (*Id.* at 373). Blonsky-Sanchez diagnosed panic disorder and assigned a GAF score of 58. (*Id.*). Vanessa Sierra, M.D., continued Paxil. (*Id.* at 374). In December 2010, after stop-

---

[3] The GAF includes a scale ranging from 0–100, and indicates a "clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Rev. 2000) (hereinafter *DSM-IV*). A GAF score of 51–60 indicates moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *DSM-IV* at 34. The Court notes that the fifth edition of the DSM, published in 2013, has abandoned the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013); *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (recognizing that the American Psychiatric Association abandoned the GAF scale after 2012).

ping Paxil because he felt "good," Plaintiff suffered a severe panic attack, falling to the floor with limited recollection of the event. (*Id.* at 375, 376). He stated that relaxation techniques have not helped. (*Id.* at 375). Blonsky-Sanchez diagnosed panic disorder, assigned a GAF score of 57, and Dr. Sierra restarted Plaintiff on Paxil. (*Id.* at 375, 376).

On March 15, 2011, Plaintiff reported strong symptoms of anxiety despite taking Paxil and Lorazepam. (R. at 289). Because he is scared to take too many medications, he does not take Paxil on the weekends. (*Id.* at 286). Plaintiff has tried relaxation techniques, with limited success. (*Id.* at 289). Blonsky-Sanchez diagnosed generalized anxiety disorder and panic disorder both with and without agoraphobia. (*Id.*). Dr. Sierra increased the Paxil dosage to 30mg, continued Lorazepam, and added Alprazolam. (*Id.* at 288).

Plaintiff began treating with Jill Degen, APN at PCC, on April 26, 2011.[4] (R. at 282–83). Plaintiff reported chronic anxiety and panic attacks, occurring almost every day. (*Id.* at 282). His anxiety gets progressively worse when he is around a large group of people. (*Id.*). He has trouble sleeping because of his anxious thoughts. (*Id.*). Degen diagnosed panic disorder with agoraphobia, exacerbated by occupational and housing problems, and assigned a GAF score of 57. (*Id.* at 282). She continued Paxil and added Trazadone to help with sleep. (*Id.* at 282, 283). On May 17, 2011, Plain-

---

[4] An advanced practice registered nurse (APN) "is a nurse with post-graduate education in nursing. . . . [T]he basis of advanced practice is the high degree of knowledge, skill and experience that is applied within the nurse-patient/client relationship to achieve optimal outcomes through critical analysis, problem solving and evidence-based decision making." <https://en.wikipedia.org/wiki/Advanced_practice_registered_nurse>

tiff reported difficulty sleeping, anxiety, and agoraphobia. (*Id.* at 312–13). Degen increased the Trazadone dosage to help with sleep. (*Id.* at 312). On May 31, 2011, Degen added Alprazolam to help with anxiety. (*Id.* at 379).

On June 17, 2011, Elizabeth Kuester, M.D., a state-agency, nonexamining physician, reviewed the medical records and completed a Disability Determination Explanation. (R. at 78–86). Dr. Kuester opined that Plaintiff has moderate difficulties in maintaining concentration, persistence, or pace. (*Id.* at 81). She also concluded that Plaintiff is moderately limited in the ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or in proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and to interact appropriately with the general public. (*Id.* at 83). On September 26, 2011, Donna Hudspeth, Psy.D., affirmed Dr. Kuester's opinion. (*Id.* at 96–104).

On June 21, 2011, Plaintiff reported that he stopped taking his Trazodone out of fear that he would not wake up in the morning and that he has not been able to afford his Paxil. (R. at 381). Degen provided psychoeducation on medicine usage and possible side effects. (*Id.*). She diagnosed panic disorder with agoraphobia, assigned a GAF score of 57, and increased Plaintiff's Paxil dosage. (*Id.* at 381–82).

On September 27, 2011, Plaintiff reported increased depression and anxiety after not taking his medications for two months because of a lack of money. (R. at

385). Degen diagnosed panic disorder with agoraphobia, exacerbated by homelessness and occupational and social factors, and assigned a GAF score of 55. (*Id.* at 385–86). She restarted Plaintiff's medications, increasing the Paxil dosage, decreasing the Alprazolam dosage, discontinuing Lorazepam, and adding Zoloft. (*Id.* at 386).

On April 24, 2012, Plaintiff reported frequent worrying, restlessness, irritability, and panic attacks. (R. at 388–89). Degen diagnosed panic disorder with agoraphobia and a generalized anxiety disorder, and assigned a GAF score of 55. (*Id.* at 390). She recommended psychotropic medications, increased the Alprazolam dosage, and continued Zoloft. (*Id.*). Two weeks later, Plaintiff reported increased worry, sleep disturbances, phobias, and panic attacks. (*Id.* at 393). Degen doubled his Alprazolam dosage. (*Id.* at 394). Less than a month later, on June 5, 2012, Plaintiff reported worrying, restlessness, irritability, phobias, panic attacks, muscle tension, and memory impairment. (*Id.* at 397–98). Degen doubled his Zoloft dosage to 100mg daily. (*Id.* at 398).

## V. DISCUSSION

### A. ALJ Did Not Properly Evaluate Degen's Opinion

On July 10, 2012, after treating Plaintiff monthly over an 18-month period, Degen completed a Mental RFC Statement. (R. at 401–05). She diagnosed panic disorder with agoraphobia and anxiety order, exacerbated by social, occupational, and environmental factors, and assigned a GAF score of 55. (*Id.* at 401). Degen opined that Plaintiff's mental limitations have a significant impact on his ability to under-

stand, concentrate, remember, interact, and adapt during an 8-hour workday. (*Id.* at 402–03). She also concluded that Plaintiff would be off task at least 30% of the time and would miss at least five days per month. (*Id.* at 404).

The ALJ afforded Degen's opinion "little weight":

> First, Ms. Degen is not a medical doctor or other acceptable medical source. She does not explain the specific findings that support her conclusions or give a function-by-function analysis. Her own treatment notes conflict with her severe restrictions. She assessed GAF scores in the mid-50s, suggesting moderate symptoms or functional limitations. Her mental status examinations note anxious mood (but do not describe the basis for this conclusion) and do not find any other abnormalities. While she mentions side effects of lethargy and dizziness, [Plaintiff] does not complain of these symptoms to any of his treating doctors. Lastly, her restrictions do not clearly apply for more than 6 months and do not take into account [Plaintiff's] significant noncompliance and gaps in treatment.

(R. at 20) (citations omitted). Plaintiff contends that the ALJ erred by improperly rejecting Degen's opinion. (Dkt. 13 at 8–12).

Under the circumstances, the ALJ's decision to give little weight to Degen's opinion is legally insufficient and not supported by substantial evidence. First, the fact that Degen is not "an acceptable medical source" is not a valid reason for giving her opinion little weight. While the opinion of an advanced practice nurses "cannot establish the existence of a medically determinable impairment," information from APNs "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Social Security Ruling (SSR)[5] 06–03, at *2. SSR 06–03 further explains:

---

[5] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations,

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

*Id.* at *3. Further, Degen is part of a team of doctors and other medical sources at PCC who treated Plaintiff. (R. at 268–313, 369–405). They all consistently diagnosed Plaintiff with panic disorder and anxiety. (*See, e.g., id.* at 275 (LCSW Blonsky-Sanchez diagnosing generalized anxiety disorder and panic disorder both with and without agoraphobia), 276–78 (Dr. Sierra observing anxiety symptoms, diagnosing anxiety disorder, and prescribing Paxil, Lorazepam, and Alprazolam)). Thus, while Degen's opinion cannot be given controlling weight, it cannot be discounted because she is an APN.

Second, Degen's restrictions are supported by the medical evidence. Degen, and the other PCC medical sources, consistently diagnosed Plaintiff with panic disorder, agoraphobia, and general anxiety.

> People who have a panic disorder (also known as anxiety attacks) suffer from sudden attacks of intense and overwhelming fear that something awful is about to happen. Their bodies react as if they're in a life-threatening situation. These attacks come without warning and often strike when the person is in a non-threatening situation. . . .

---

the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably *bound* by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

> Agoraphobia usually involves a fear of being caught in a place where 'escape' would not be easy. . . . You may begin to avoid the places and situations where you had a panic attack before, for fear it might happen again. This fear can keep you from traveling freely or even leaving your home.

<http://www.healthline.com/health/panic-disorder-with-agoraphobia> There are no specific tests to diagnose panic disorder or agoraphobia. Instead, the diagnoses are made only after the health care professional conducts in-depth interviews with the patient.[6]

In addition to Degen's examinations finding anxious moods and suicidal ideations, Plaintiff repeatedly reported symptoms consistent with a serious panic disorder. Over an 18-month period, he noted chronic anxiety and panic attacks, which get progressively worse when he is around a group of people. (R. at 282, 388–89, 393). His anxious thoughts cause insomnia, anorexia, and agoraphobia. (*Id.* at 312–13). He also reported phobias, irritability, and memory impairment. (*Id.* at 393, 397–98). *See McClinton v. Astrue*, No. 09 C 4814, 2012 WL 401030, at *11 (N.D. Ill. Feb. 6, 2012 ("Almost all diagnoses require some consideration of the patient's subjective reports, and certainly [the claimant's] reports had to be factored into the calculus that yielded the doctor's opinion."). And there is nothing in the record to suggest that Degen disbelieved Plaintiff's descriptions of his symptoms, or that Degen relied more heavily on Plaintiff's descriptions than her own clinical observations in concluding that Plaintiff was seriously impaired. Moreover, Degen periodically altered Plaintiff's medications in an attempt to manage his various mental disorders.

---

[6] *See* <http://www.mayoclinic.org/diseases-conditions/agoraphobia/basics>

(R. at 282, 283 (adding Trazadone to address insomnia), 312 (increasing Trazadone dosage), 389 (adding Alprazolam to address anxiety), 381–82 (increasing Paxil dosage), 386 (increasing Paxil dosage, decreasing Alprazolam dosage, discontinuing Lorazepam, and adding Zoloft), 394 (doubling Alprazolam dosage), 398 (doubling Zoloft dosage)).

The ALJ contends that Degen's "moderate" GAF scores contradict her opinion that Plaintiff is incapable of sustaining a full-time job. (R. at 20). But the GAF scale measures a "clinician's judgment of the individual's *overall* level of functioning." *DSM-IV* at 32 (emphasis added). It "is intended to be used to make *treatment* decisions," not evaluate whether the individual is capable of full-time work. *Wilkins v. Barnhart*, 69 F. App'x 775, 780 (7th Cir. 2003) (emphasis added). Thus, Plaintiff's *overall* level of functioning could be moderately impaired while still being unable to function at work. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (explaining that the GAF score does not necessarily reflect doctor's opinion of functional capacity because the score measures severity of both symptoms *and* functional level). Indeed, a GAF score alone *cannot* determine disability. *Id.* ("[N]owhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score.") (citations omitted).

Third, the ALJ failed to properly evaluate Plaintiff's noncompliance and gaps in treatment. Plaintiff explained that he could not afford his medications. (R. at 381, 385). He also expressed a fear of taking too many medications, afraid he might not wake up. (*Id.* at 286, 381). In the Seventh Circuit, "infrequent treatment or failure

to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment." *Craft v. Astrue*, 539 F.3d 668, 678–79 (7th Cir. 2008); *see* SSR 96-7p. Prior to drawing a negative inference about a claimant's symptoms and their functional effects from a failure to attain certain treatment, however, the ALJ must first consider any explanations that the individual may provide or other explanatory information in the case record. SSR 96-7p; *see Craft*, 539 F.3d at 678–79 ("An inability to afford treatment is one reason that can 'provide insight into the individual's credibility.'") (citing SSR 96-7p). But here, the ALJ did not question Plaintiff at the hearing to determine why he was noncompliant. SSR 96-7p, at *7 (The ALJ "may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner."). Further, people with serious mental impairments are often unable to take their medications consistently. Indeed, the Seventh Circuit has cautioned ALJs against placing too much weight on the noncompliance of a mentally impaired claimant. *See Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011) ("[P]eople with serious psychiatric problems are often incapable of taking their prescribed medications consistently.").

The Commissioner argues that during Plaintiff's noncompliant periods, his GAF scores remained stable, he was able to visit family in Puerto Rico, and he worked as an automobile mechanic. (Dkt. 21 at 7). But the ALJ did not include these reasons in his rejection of Degen's opinion. (R. at 20). The Court must limit its review to the

rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 90–93 (1943); *accord Hanson v. Colvin*, 760 F.3d 759, (7th Cir. 2014) ("We are particularly concerned about the *Chenery* violations committed by the government because it is a recurrent feature of the government's defense of denials of social security disability benefits, as this court has noted repeatedly."). In any event, Plaintiff's GAF scores remained stable through both compliant and noncompliant periods, suggesting that his medical team had not yet identified an effective medication regimen. And taking a single airplane flight with his wife to visit his father in Puerto Rico (R. at 51) does not establish that Plaintiff is able to perform full time work without debilitating panic attacks. Indeed, he testified to having panic attacks both on the plane and during his stay in Puerto Rico. (*Id.* at 57–58). Finally, Plaintiff's occasional self-employed mechanic work for friends (*id.* at 58–59, 275) does not establish that he is capable of full time work.

Fourth, the ALJ's criticism of Degen's opinion for her failure to provide a function-by-function analysis is contrary to law. "[T]he question of what a claimant can do despite his limitations is exclusively within the ALJ's purview." *Colson v. Colvin*, No. 13 CV 3018, 2015 WL 4880965, at *9 (N.D. Ill. Aug. 14, 2015); *see* 20 C.F.R. § 416.927(d)(2) (noting that the final responsibility of crafting the RFC is reserved to the Commissioner); *Bates v. Colvin,* 736 F.3d 1093, 1102 n.4 (7th Cir. 2013) (noting that an opinion regarding what a claimant can or cannot do in a given day is not a "medical opinion" to which the ALJ must defer). Thus, a medical source need not provide a function-by-function analysis. *Colson*, 2015 WL 4880965, at *9. Degen's

failure to provide such an analysis therefore does not support the ALJ's decision to disregard her opinion.

Finally, the ALJ's conclusion that Degen's restrictions "do not clearly apply for more than 6 months" (R. at 20) is not supported by substantial evidence. Degen checked "yes" to a form question which asked whether Plaintiff's mental limitations would make him "unable to obtain and retain work in a competitive environment . . . for a continuous period of at least six months." (*Id.* at 405). Degen made this finding after treating Plaintiff on a monthly basis for 18 months, and nothing on this form indicates that Degen's opinion is limited to only 6 months. The ALJ erred by handpicking which evidence to evaluate while disregarding other critical evidence. *Scrogham v. Colvin*, 765 F.3d 685, 696–99 (7th Cir. 2014); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

The ALJ also has a duty to recontact a medical source when the evidence received "is inadequate for [the ALJ] to determine whether [the claimant is] disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e); see also SSR 96–5p (stating if "the adjudicator cannot ascertain the basis of the [treating source's] opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion."). The regulations also state that an ALJ will seek additional evidence or clarification when: (1) the report from the treating physician contains a conflict or ambiguity that must be resolved; (2) the report does not contain all the necessary information; or (3) the report does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R.

§§ 404.1512(e)(1), 416.912(e); *accord Brown v. Astrue*, No. 10 C 2153, 2012 WL 280713, at *17 (N.D. Ill. Jan. 30, 2012). Thus, if the ALJ questioned whether Degen's opinion was limited to six months, he should have contacted her for clarification.

In sum, the ALJ failed to "build an accurate and logical bridge from the evidence to [his] conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the Court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595. For the reasons set forth herein, the ALJ's decision is contrary to law and not supported by substantial evidence. On remand, the ALJ shall evaluate Degen's opinion by using the factors set forth in 20 C.F.R. §§ 404.1527, 416.927 and SSR 06-3p.

## B. Other Issues

Because the Court is remanding to determine the proper weight to be given Degen's opinion, the Court chooses not to address Plaintiff's other argument that the RFC does not fully account for his panic disorder. (Dkt. 13 at 6–8). However, on remand, after determining the weight to be given Degen's opinion, the ALJ shall reevaluate Plaintiff's mental impairments and RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of his findings in accordance with applicable regulations and rulings. "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted).

Finally, with the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [13] is **GRANTED**, and Defendant's Motion for Summary Judgment [20] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: December 2, 2015

MARY M. ROWLAND
United States Magistrate Judge